UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

---

GWENDOLYN NESMITH,

    Plaintiff,

v.

INDEPENDENCE BLUE CROSS,

    Defendant.

Civil Action No. 02-CV-2894

---

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT INDEPENDENCE BLUE CROSS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Independence Blue Cross ("IBC") hereby responds to the First Amended Complaint in the above action, in accordance with the numbered paragraphs, as set forth below:

IBC admits that Plaintiff purports to initiate this action to redress alleged violations of Title VII of the Civil Rights Act of 1964, as amended, and other applicable federal and state law. IBC denies the remaining allegations in Paragraph 1.

2. IBC admits that Plaintiff purports to initiate this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981a, and applicable state law. IBC further admits that this Court has personal jurisdiction over IBC. The remaining allegations in Paragraph 2 constitute conclusions of law to which no responsive pleading is required.

3. IBC admits that this Court has subject matter jurisdiction over the instant action and supplemental jurisdiction over Plaintiff's state law claims. IBC denies that IBC violated Plaintiff's civil rights, as alleged in the first sentence of Paragraph 3. The remaining

allegations in Paragraph 3 constitute conclusions of law to which no responsive pleading is required.

  4. IBC admits that venue is proper in the Eastern District of Pennsylvania. IBC denies that IBC engaged in any "acts and/or omissions giving rise to the claims set forth" in the Complaint or in any "illegal actions," as Plaintiff alleges in the last sentence of Paragraph 4. The remaining allegations in Paragraph 4 constitute conclusions of law to which no responsive pleading is required.

  5. IBC incorporates by reference its responses to Paragraphs 1 through 4 as if fully set forth herein.

  6. IBC admits that Plaintiff is an African-American adult female and that IBC's records reflect that Plaintiff is a United States citizen. IBC further admits that IBC employed Plaintiff at IBC's offices in Philadelphia. IBC lacks knowledge or information sufficient to form a belief as to Plaintiff's status as a citizen of Pennsylvania and her current address, and therefore denies the same.

  7 The allegations in Paragraph 7 are conclusions of law to which no responsive pleading is required.

  8. IBC denies that any IBC employees engaged in any "illegal and discriminatory acts and omissions" towards Plaintiff, as set forth in the second sentence of Paragraph 8. The remaining allegations in Paragraph 8 contain conclusions of law to which no responsive pleading is required.

  9. IBC incorporates by reference its responses to Paragraphs 1 through 8 as if fully set forth herein.

10. The allegations in the first sentence of Paragraph 10 are conclusions of law to which no responsive pleading is required.

    a. IBC admits that Plaintiff filed a Complaint with the Philadelphia Commission on Human Relations that bears the date September 15, 1997 and docket number E97091775. IBC lacks knowledge or information sufficient to form a belief as to whether the charge was timely filed, and therefore denies the same.

    b. IBC has knowledge of a cross-filed Equal Employment Opportunity Commission charge bearing the number 17G970345. IBC lacks knowledge or information sufficient to form a belief as to whether the charge was timely cross-filed, and therefore denies the same.

    c. IBC admits that the EEOC issued a Notice of Right to Sue to Plaintiff bearing the date February 20, 2002.

    d. IBC lacks knowledge or information sufficient to form a belief as to when Plaintiff received the Notice, and therefore denies the same. The remaining allegations in Paragraph 10(d) are conclusions of law to which no responsive pleading is required.

    e. The allegations in Paragraph 10(e) are conclusions of law to which no responsive pleading is required.

11. IBC admits that Plaintiff began her employment with IBC in August 1990.

12. IBC admits that Plaintiff's first position at IBC was as a Marketing Telephone Assistant and that she was assigned to work at IBC's offices at 19th and Market Streets in Philadelphia.

13. IBC admits that Wandrella Mouton was the Director of Marketing and was Caucasian. IBC denies the remaining allegations in Paragraph 13

14. IBC admits that approximately one year after being hired as a Marketing Telephone Assistant, IBC promoted Plaintiff to the position of sales support assistant and increased her salary.

5. IBC admits that Marlene Gallone reported to Wandrella Mouton. IBC denies the remaining allegations in Paragraph 15

16. IBC admits that Plaintiff remained in the position of sales support assistant until 1993

7. IBC admits that while Plaintiff was in the position of sales support assistant, she complained to human resources about discrimination.

18. Denied.

19. IBC admits that its records reflect that Plaintiff claimed to have suffered a miscarriage. IBC lacks knowledge or information sufficient to form a belief as to whether Plaintiff experienced the alleged miscarriage at the approximate time of her alleged complaints, and therefore denies the same. Plaintiff's remaining allegations in Paragraph 19 are vague, as they fail to specify a particular human resources employee who allegedly "told her not to come back after recovering because they were going to fire her because she had complained about Ms. Mouton." After reasonable investigation, IBC states that it lacks knowledge or information sufficient to form a belief as to whether any human resources employee made the alleged statements, and therefore denies the same.

20. IBC admits that Plaintiff filed a charge against IBC in 1992 with the Philadelphia Commission on Human Relations, alleging race discrimination, which was cross-filed with the Equal Employment Opportunity Commission. IBC denies the remaining allegations in Paragraph 20.

21. Due to the number of positions and the number of leaves Plaintiff took during the course of her employment with IBC, IBC lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 21, and therefore denies the same

22. IBC admits that Plaintiff was placed in the position of Customer Service Representative in 1993.

23. IBC admits that Plaintiff was a Customer Service Representative for approximately one year and two months. IBC denies the remaining allegations in Paragraph 23.

24. Denied.

25. IBC admits that Plaintiff obtained the job of enrollment specialist.

26. Admitted.

27. IBC admits that Christine Boden had supervisory/management authority over Plaintiff while Plaintiff was an enrollment specialist. IBC denies the remaining allegations in Paragraph 27.

28. Denied

29. Denied.

30. Denied.

31. Denied.

32. IBC admits that Chuck Ferro became Plaintiff's supervisor in January 1997 and remained Plaintiff's supervisor until her termination in August 1997. IBC denies the remaining allegations in Paragraph 32.

33. Denied

34. Denied.

35. Denied.

36. Denied.

37. IBC admits that certain employees of IBC were aware of Plaintiff's prior EEOC charge. IBC denies that Ms. Boden, Ms. Kelly, or Mr. Ferro had any knowledge of Plaintiff's EEOC charge prior to Plaintiff's termination.

38. IBC lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 38, and therefore denies the same.

39. Denied.

40. Denied.

41. Denied.

42. IBC denies that its human resources staff ever "rubbed Plaintiff's nose in the fact that she filed an EEOC charge."

43. Plaintiff's allegations in Paragraph 43 are vague, as they fail to specify a particular human resources employee who allegedly said to Plaintiff "I'm going to give you this, but you really don't deserve it because you took them to court." After reasonable investigation, IBC states that it lacks knowledge or information sufficient to form a belief as to whether any human resources employee made the alleged statements, and therefore denies the same.

44. IBC admits that IBC terminated Plaintiff's employment on August 29, 1997.

45. IBC admits that Plaintiff claimed that she slipped and sustained an injury on July 17, 1997. IBC lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 45, and therefore denies the same.

46. IBC admits that its records reflect that Plaintiff was diagnosed with a sprained ankle and a bruised knee. IBC lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 46, and therefore denies the same.

47. IBC admits that Plaintiff's doctor drafted a note bearing the date September 2, 1997, stating that Plaintiff was "disabled from 8-7-1997 to a [sic] indefinite period." IBC is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 47, and therefore denies the same.

48. Denied.

49. IBC lacks knowledge or information sufficient to form a belief as to whether Plaintiff's mother received a Western Union telegram for Plaintiff at 5:15 P.M. on August 29, 1997, and therefore denies the same. IBC further denies any implication in Paragraph 49 that the telegram IBC sent Plaintiff on August 28, 1997 was received on August 29, 1997.

50. IBC lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 50, and therefore denies the same.

51. IBC admits that it sent a telegram to Plaintiff on August 28, 1997, which stated that Plaintiff would be terminated if she did not return to work on August 29, 1997. IBC denies that IBC's August 28, 1997 telegram was received on August 29, 1997.

52. Plaintiff's allegations in Paragraph 52 are vague, as they fail to specify the particular human resources employees Plaintiff allegedly called. After reasonable investigation, IBC has no record of any voicemail messages from Plaintiff.

53. Plaintiff's allegations in Paragraph 53 are vague, as they fail to specify the particular human resources employees Plaintiff allegedly called on September 3, 1997. After reasonable investigation, IBC lacks knowledge or information sufficient to form a belief as to whether Plaintiff in fact called human resources at 8:30 A.M. on September 3, 1997, and therefore denies the same. IBC further denies that September 3, 1997 was the next business day after August 29, 1997 and further denies that September 3, 1997 fell on a Tuesday.

54. IBC admits that Plaintiff spoke to Bill Blount in September. IBC denies the remaining allegations in Paragraph 54.

55. Denied.

56. IBC admits that Plaintiff sent a doctor's note to IBC. IBC lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 56, and therefore denies the same.

57. IBC has no record of any messages Plaintiff allegedly left for Mr. Blount, Mr. Ferro, Ms. Shane, or Ms. Henson, and therefore denies the allegations in Paragraph 57.

58. Denied.

59. IBC admits that Plaintiff applied for unemployment compensation benefits and that the Pennsylvania Department of Labor and Industry Bureau of UC Benefits and Allowances determined that she was entitled to benefits.

60. IBC incorporates by reference its responses to Paragraphs 1 through 59 as if fully set forth herein.

61  Denied.

62. Denied.

63. Denied.

64. Denied.

65. IBC incorporates by reference its responses to Paragraphs 1 through 64 as if fully set forth herein.

66. Denied.

67. Denied.

## PRAYER FOR RELIEF

IBC admits that Plaintiff is seeking the relief described in paragraphs A through H of her prayer for relief, but denies that Plaintiff is entitled to any relief from IBC.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to satisfy the statutory and/or jurisdictional prerequisites for the institution of an action under Title VII of the Civil Rights Act of 1964, as amended, the Pennsylvania Human Relations Act, as amended, and/or any other state or local law.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

Plaintiff's claims are barred by the doctrine of laches.

### Fourth Affirmative Defense

IBC has made a good faith effort to comply with all applicable non-discrimination and non-retaliation laws and, therefore, Plaintiff is not entitled to punitive damages.

### Fifth Affirmative Defense

Plaintiff's claims for monetary relief are barred to the extent that she has failed to mitigate her alleged monetary losses.

WHEREFORE, Defendant Independence Blue Cross respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and award it its costs and attorneys' fees and whatever other relief the Court deems just.

Respectfully submitted,

_/s/ Donna M. Orzell_
STEVEN R. WALL (I.D. No. 39012)
SARAH E. BOUCHARD (I.D. No. 77088)
DONNA M. ORZELL (I.D. No. 87831)
1701 Market Street
Philadelphia, PA 19103
215-963-4928/5077/5574

Of Counsel:

MORGAN, LEWIS & BOCKIUS LLP

Attorneys for Defendant
Independence Blue Cross

## CERTIFICATE OF SERVICE

I, Donna M. Orzell, certify that a true and correct copy of the foregoing Answer and Affirmative Defenses was served on:

> Marc Weinstein
> The Weinstein Law Firm
> One Northbrook Corporate Center
> 1210 Northbrook Drive, Suite 280
> Trevose, PA 19053

this 18th day of June 2003, by facsimile and first class mail.

_____
Donna M. Orzell